Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| HÉCTOR LUIS BONILLA MARCANO, ET ALS. APELANTE v CARMEN J. LUQUE OCASIO APELADA | KLAN202500517 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas Caso Núm. AB2019CV00206 Sobre: Negación de acceso para camino provisional |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de agosto de 2025.

### I.

El 6 de junio de 2025, el apelante, Héctor Luis Bonilla Marcano y otros (señor Bonilla Marcano y otros o apelantes) presentaron el recurso de *Apelación* en la que solicitaron que revoquemos la Sentencia emitida el 13 de marzo de 2025, notificada el 19 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario).[1] En el referido dictamen, el TPI, luego de celebrar un juicio en su fondo, declaró No Ha Lugar la *Demanda* promovida por la parte apelante que incoó en contra de Carmen J. Luque Ocasio (señora Luque Ocasio o parte apelada) sobre el acceso a un camino ubicado entre las fincas de las partes. En su consecuencia, el foro primario desestimó la reclamación, con perjuicio, en todas sus partes.

---

[1] Apéndice de la *Apelación*, Anejo 3, págs. 9-13.

El 10 de junio de 2025, emitimos una *Resolución* en la que otorgamos cinco (5) días, a partir de la notificación,[2] para que la parte apelante presentara toda la prueba documental desfilada ante el TPI y para que indicara el método de reproducción oral de la prueba testifical a utilizarse respecto al testimonio del único testigo estipulado por las partes, el Ingeniero Harry Figueroa Tirado.

En cumplimiento con lo ordenado, el 27 de junio de 2025, la parte apelante presentó su *Moción en Cumplimiento de Orden*. Incluyó la prueba documental solicitada. Respecto a la prueba oral, pidió 30 días, a partir del 8 de julio de 2025, debido a que el abogado estaba de viaje, para presentar la regrabación y transcripción del testimonio del testigo (TPO), el Ingeniero Harry Figueroa Tirado.

El 2 de julio de 2025, mediante *Resolución*, concedimos hasta el 5 de agosto de 2025 para someter la TPO estipulada.

El 7 de julio de 2025, la parte apelada presentó su *Oposición de Apelación de Sentencia emitida el 13 de marzo de 2025*. Indicó que la parte apelante carece de fundamentos para la aplicación del derecho de servidumbre a un terreno que está descrito como camino municipal y, más tarde, como camino público. Defendió el testimonio pericial vertido en corte abierta, por lo que solicitó al foro apelativo intermedio que denegara la *Apelación* presentada al estimar como razonable la determinación emitida por el foro primario. Insistió en que la prueba presentada establece la existencia de un camino municipal y/o de uso público "que no puede ser interrumpido por la demandante para uso de estacionamiento privado". Solicitó que se le otorgue deferencia a la determinación del TPI, a base de la credibilidad que le mereció la prueba desfilada ante sí.

---

[2] La *Resolución* fue emitida el 10 de junio de 2025 y notificada el 24 de junio de 2025.

El 8 de agosto de 2025, emitimos una *Resolución* resolviendo que ante el incumplimiento de la apelante con someter la TPO, dimos por desistidos los señalamientos de error que versan sobre la apreciación de la prueba.

El 11 de agosto de 2025, la parte apelante presentó el escrito *Comparecencia Especial en solicitud de reconsideración.* Incluyó la *Transcripción del juicio en su fondo.* Se excusó por la tardanza en la entrega y por no solicitar término adicional. Rogó reconsideración sobre la determinación dictada el 8 de agosto de 2025.

El 12 de agosto de 2025, emitimos una *Resolución,* mediante la que se ordenó nuevamente la presentación de la TPO estipulada. La parte apelante no cumplió con lo ordenado, por lo que se le otorgó hasta el 28 de agosto de 2025 para someterla estipulada.

El 18 de agosto de 2025, las partes presentaron una *Moción Conjunta en cumplimiento de orden.* En ella, informaron el acuerdo y estipulación de la TPO sometida previamente por la parte apelante.

El 19 de agosto de 2025, emitimos una *Resolución* en la que acogimos la TPO estipulada. Se le concedió a la parte apelante hasta el 26 de agosto de 2025 para presentar su alegato suplementario, de interesar así hacerlo.[3]

Transcurrido el tiempo para que la parte apelante presentara su alegato suplementario, sin que lo hiciera, damos por perfeccionado el recurso de *Apelación* y, en adelante, pormenorizamos los hechos atinentes a la controversia.

**II.**

El caso de marras tuvo su génesis el 11 de septiembre de 2019 cuando el señor Bonilla Marcano y otros presentaron una *Demanda*[4] en contra de la señora Luque Ocasio por el acceso a un camino

---

[3] En virtud de la Regla 21 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 36, 215 DPR ___ (2025).
[4] Apéndice de la *Apelación,* Anejo 1, págs. 1-3.

ubicado entre las propiedades de ambas partes. Esbozaron que el camino que da acceso a las fincas de los apelantes no es un camino de uso público, conforme a una certificación expedida por el Municipio de Aguas Buenas. Alegaron que la parte apelada realizó unos trabajos en su finca, que incluyeron la elaboración de un talud, un terraplén y la construcción de una jaula para albergar caballos. También, los apelantes reclaman que la parte apelada pretende acceder a las jaulas de los caballos utilizando el camino ubicado en terrenos propiedad de los apelantes. Sostuvieron que no han concedido servidumbre de paso ni han autorizado su uso como vía de acceso a la parte apelada. Aseguraron que la finca de la apelada no se encuentra enclavada y que dichos trabajos destruyeron el camino paralelo que ella tenía en su terreno. Por esta acción, los apelantes se oponen a que la apelada utilice los accesos a su finca y que intervengan con las fincas aledañas; y solicitaron al Tribunal que negara a la apelada el acceso al terreno/camino que sirve de entrada a las casas de los apelantes.

El 18 de septiembre de 2019, la señora Luque Ocasio presentó su *Contestación a la Demanda*.[5] En síntesis, reconoció los trabajos de movimiento de tierra y la construcción de una jaula para albergar caballos, entre otras edificaciones. Negó que el camino sea parte de la propiedad de los apelantes y negó que el señor Bonilla Marcano y otros tengan que dar autorización y/o servidumbre para transitarlo.

El 12 de diciembre de 2022 se llevó a cabo el *Juicio en su fondo*. Allí, las partes estipularon toda la prueba documental y se tomó el testimonio pericial del Ingeniero Harry Figueroa Tirado.[6]

El 13 de marzo de 2025, el TPI, mediante *Sentencia*[7], declaró No Ha Lugar la demanda presentada por la parte apelante, y formuló

---

[5] Apéndice de la *Apelación*, Anejo 2, págs. 4-8.
[6] Entrada Núm. 56 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC) del caso AB2019CV00206. *Minuta.*
[7] Apéndice de la *Apelación*, Anejo 3, págs. 9-13. La *Sentencia* fue emitida el 13 de marzo de 2025 y notificada el 19 de marzo de 2025.

siete (7) determinaciones de hechos, a tenor con la prueba desfilada ante sí; las mismas son las siguientes:

1. El solar de la parte demandada se describe en el Registro de la Propiedad, del siguiente modo:
   "R[Ú]STICA: Predio de terreno radicado en el Bo. Sonadora del término municipal de Aguas Buenas, con una cabida superficial de mil doscientos cuarenta y dos metros con cuarenta y cinco centímetros cuadrados (1242.45 m/c); en linde: por el Norte, con carretera asfaltada; por el Sur con camino público y Felipe Díaz; por el Este, con Manuel Jiménez; y por el Oeste, con el Solar segregado en el caso 78-45-G-495-KPL)."

2. El solar de la parte demandante originalmente era un solar de 1,568 metros cuadrados, que se describe a continuación:
   "R[Ú]STICA: Solar radicado en el Barrio Sonadora del término municipal de Aguas Buenas, con una cabida superficial de MIL QUINIENTOS SESENTA y OCHO METROS CUADRADOS; en lindes, por el Norte, en cincuenta y dos metros con cincuenta y dos centímetros con terrenos de un solar segregado mediante el caso número sesenta y nueve guión cuarenta y cinco guión B guión ciento cuatro guión KPL; por el Sur, en veintiocho metros con veintinueve centímetros con los terrenos propiedad del Sr. Félix Daniel Rosario; por el Este , en cuarenta y cuatro metros con ochenta y nueve centímetros con los terrenos de la finca principal de la cual se segrega dicho lote; y por el Oeste, en cuarenta y cinco punto ochenta metros con un camino municipal que provee acceso al lote a segregarse.
   La misma está inscrita al Folio 19, Tomo 181 de Aguas Buenas, Finca Núm. 8713, Inscripción Primera (1ra.)."

3. Posteriormente, la parte demandante en la Escritura #15 sobre Cesión de Derecho de Superficie de Edificación ante el Notario Pablo Ramos Rivera, de fecha 11 de mayo de 1993, provista por la parte demandante, en su párrafo tercero se manifiesta, que de ese solar mayor de 1,568 metros cuadrados se da una Cesión de Derecho de Superficie a Perpetuidad sobre un solar de 533.6962 metros cuadrados. Las colindancias de esta área se describen a continuación:
   "Colindante por el Norte con Isabel Ocasio Hernández y Etanislao Díaz López; por el Sur con Félix Daniel Rosario; por el Este con Julia Hernández vda. De Ocasio y, por el Oeste con Camino de Uso Público."

4. La descripción de los solares de la parte demandante, tanto en su inscripción original de 1568 metros, establecen de manera clara e inequívoca, que por el Oeste colinda con un Camino Municipal, que provee acceso al lote a segregarse.

5. Del mismo modo, cuando la Escritura número 15 de Cesión de Derecho de Superficie ante el Notario Pablo Ramos Rivera del 11 de mayo de 1993 se hace la cesión de derecho de superficie de 533.6962 metros cuadrados, se describe que por Oeste colinda con Camino de Uso Público.

6. Cabe señalar que del testimonio del Ingeniero Harry Figueroa Tirado surge que, al momento de la Segregación del solar de 1,568 metros cuadrados, ahora de la parte demandante, les correspondía a los familiares anteriores de título, de donde surgen los derechos de los demandantes, entregar dicho camino al Municipio de Aguas Buenas, Puerto Rico. La referida obligación que no fue cumplida, ya que existe una certificación del Municipio de Aguas Buenas, a los efectos de que dicho no aparecía en la lista de caminos municipales.

7. Las descripciones registrales que obran en evidencia establecen que al momento de segregarse los terrenos, la colindancia Oeste, tanto en la descripción del solar original, como dentro de la descripción de los 533.6962 metros

cuadrados de derecho de superficie, establecía en la primera, que por el Oeste colindaba un Camino Municipal, ratificando la identidad púbica de dicho camino, cuando se establece el solar cedido por derecho de superficie, establece que por el Oeste colinda Camino de Uso Público.

En el dictamen, el foro primario concluyó, a base de la prueba que tuvo ante sí, que el camino en cuestión no le pertenece a la parte apelante por lo que no puede privar de su uso a la parte apelada. Por tal razón, ordenó al señor Bonilla Marcano y otros cesar y desistir de interrumpir el paso por el camino a la señora Luque Ocasio.

Inconforme, el 31 de marzo de 2025, la parte apelante presentó su *Moción al amparo de la Regla 43.1 y 47 de las de Procedimiento Civil de 2009, según enmendada.*[8] Solicitó que se realizaran las siguientes determinaciones de hechos adicionales:

a. El camino municipal que se señaló en el plano, el mismo no cumple con los requisitos de que sea camino municipal, pues el mismo no cuenta con las dimensiones requeridas para ello, conforme dispone la ley, nunca fue cedido al municipio y no se puede considerar camino municipal, según lo declarado el perito Ing. Harry Figueroa Tirado durante la vista evidenciaria.

b. El perito también dijo que con frecuencia al describir las propiedades y ser un camino de esa naturaleza, se describe como camino municipal y/o de uso público sin serlo, esto por determinación de quien describe no cumpliendo este camino para que se considere como tal.

c. El perito Ing. Harry Figueroa Tirado declaró que la descripción, tamaño, forma y ubicación de la servidumbre de paso establecida sobre la finca 8,713 Demarcación de Aguas Buenas era similares al camino allí existente.

d. El perito Ing. Harry Figueroa Tirado expresó como parte de su testimonio que el camino municipal y/o de uso público tiene que tener 15 metros de ancho y el camino allí existente tenía 5 metros solamente, por ello no se podría considerar camino municipal y/o de uso público.

e. El Municipio de Aguas Buenas certificó que sobre la finca 8,713 no existe camino municipal según los registros del Municipio de Aguas Buenas.

f. El perito Ing. Harry Figueroa Tirado expresó que los terrenos donde estaba constituida esta servidumbre, pertenecía a la finca 8,713 y que estas servidumbres colindaban con la finca de los demandados, siendo los terrenos de los demandados mucho más altos que los terrenos de los demandantes.

g. El perito Ing. Harry Figueroa Tirado expresó que los demandados podían llegar a las jaulas de caballo construidas por ellos en la parte posterior de su propiedad, a través de la finca de los demandados, pues no estaban enclavados.

---

[8] *Íd.*, Anejo 4, págs. 14-20.

h. El perito Ing. Harry Figueroa Tirado expresó que los terrenos donde estaba constituida esta servidumbre pertenecía a la finca 8,713 y que estas servidumbres colindaban con la finca de los demandados, siendo los terrenos de los demandados mucho más altos que los terrenos de los demandantes.

i. En la escritura número quince, sobre Cesión de Derechos de Superficie y Edificación, otorgada ante el notario Pablo Ramos Rivera, donde compareciera Etanislao Díaz López y Doña Isabel Ocasio Hernández como cedentes y Héctor Bonilla y Doña Eva Díaz como superficiarios, se constituyó servidumbre de paso como predio sirviente sobre la siguiente finca:

*"Rústica: Solar radicado en el Barrio Sonadora del término municipal de Aguas Buenas, con una cabida superficial de MIL QUINIENTOS SESENTA Y OCHO METROS CUADRADOS; en lindes: por el NORTE, en cincuenta y dos metros con cincuenta y dos centímetros con terrenos de un solar segregado mediante el caso número sesenta y nueve guión cuarenta y cinco guión B guión ciento cuatro guión KPL; por el SUR, en veintiocho metros con veintinueve centímetros, con los terrenos propiedad del Sr. Félix Daniel Rosario; por el ESTE, en cuarenta y cuatro metros con ochenta y nueve centímetros, con los terrenos de la finca principal de la cual se segrega dicho lote; y por el OESTE, en cuarenta y cinco punto ochenta metros, con camino municipal que provee acceso al lote a segregarse.*

*Inscrita al folio 19 del tomo 181 de Aguas Buenas, finca número 8,713, Registro de la Propiedad de Caguas, Sección Segunda."*

j. El acápite tercero de dicha escritura lee: *"TERCERO: Las parte[s] comparecientes tienen convenida la cesión de derecho de superficie a perpetuidad sobre Cero Punto Trece Cincuenta y Ocho Cuerdas (0.1358 cdas.), equivalentes a Quinientos Treinta y Tres Punto Sesenta y Nueve Sesenta y Dos Metros Cuadrados (533.6962 m/c): Colindante por el Norte, con Isabel Ocasio Hernández y Etanislao Díaz López; por el SUR, con Félix Daniel Rosario; por el ESTE, con Julia Hernández vda. De Ocasio; y por el OESTE, con Camino de Uso Público."*

k. El acápite cuarto de dicha escritura le: *"CUARTO: Por la presente el Concedente da y confier[e] a favor del Superficiario un derecho de superficie a perpetuidad sobre el área anteriormente mencionada cuya cesión se lleva a efecto de acuerdo a las siguientes cláusulas y condiciones:*
*(A) Se hace la presente cesión del derecho de superficie por el convenido y ajustado precio de QUINIENTOS D[Ó]LARES ($500.00), cuya cantidad manifiesta el Concedente haber recibido del Superficiario con anterioridad a este acto.*
*(B) Constituye el objetivo de la presente cesión del derecho de superficie que el Superficiario inscriba a su nombre en el Registro de la Propiedad como finca independiente, la edificación que en el área anteriormente descrita enclava en la actualidad como más adelante dispondrá.*
*(C) El Superficiario entra en posesión del derecho de superficie sobre el área anteriormente descrita sin más solemnidad que el presente otorgamiento.*
*(D) El Superficiario se hará cargo de todas las contribuciones que sobre el derecho de superficie y de la edificación que le pertenece, sean impuestas.*

*(E) El Concedente y el Superficiario reconocen recíprocamente su derecho de tanteo y retracto sobre la propiedad y derecho aquí enajenados.*

*(F) SERVIDUMBRE: Por la misma causa y consideración que se han llevado a efecto la cesión del derecho de superficie contenida en el presente documento, la parte Concedente constituye servidumbre real de paso permanente a favor del Superficiario para que la superficie concedida tenga acceso a vía pública sobre una faja de terreno actualmente existente, la cual se describe como sigue:*

*FAJA DE TERRENO de Cinco Metros (5.00 m.) de ancho que discurre desde la colindancia sur hasta su colindancia norte. Se valora para propósito de registrar la servidumbre en Cien Dólares ($100.00)."*

l. La servidumbre de paso constituida en dicha escritura tiene la descripción mencionada en el acápite 7 de esta escritura.

m. Dicha servidumbre se encuentra inscrita en el Registro de la Propiedad donde el predio sirviente es la finca 8,713.

[...]

El 14 de abril de 2025, la parte apelada replicó a la presentación de los documentos anejados por la parte apelante.[9] En síntesis, controvirtió los documentos presentados y reiteró el carácter público del camino.

El 16 de abril de 2025, la parte apelada presentó su *Réplica a Moción al amparo de la Regla 43.1 y 47 de las de Procedimiento Civil de Puerto Rico del 2009, según enmendadas.*[10] Estimó que los documentos presentados apoyan la decisión emitida por el foro primario, por lo que percibió como acto temerario la petición de la parte apelante, de querer establecer hechos que son contrarios a la prueba presentada. Por lo mismo, solicitó que se declarara No Ha Lugar la moción presentada por la parte apelante al amparo de las Reglas 43.1 y 47 de las Reglas de Procedimiento Civil.

El 30 de abril de 2025, la parte apelante presentó su *Dúplica a moción radicada por la parte demandada.*[11] Insistió en que la parte

---

[9] *Íd.*, Anejo 7, págs. 25-29. Debido a un error de enumeración en las páginas del Apéndice a partir de la página 21, identificamos la moción por su nombre completo: *Réplica a moción anejando documentos.*

[10] *Íd.*, Anejo 8, págs. 30-37. Debido a un error de enumeración de las páginas del Apéndice a partir de la página 21, identificamos la moción por su nombre completo: *Réplica a moción al amparo de la Regla 43.1 y 47 de las de Procedimiento Civil de Puerto Rico del 2009, según enmendadas.*

[11] *Íd.*, Anejo 9, págs. 38-39. Debido a un error de enumeración de las páginas del Apéndice a partir de la página 21, identificamos la moción por su nombre completo: *Dúplica a moción radicada por la parte demandada.*

apelada no logró establecer que el camino sea público y se apoyó en la declaración del Municipio que indica que no existe camino público. Sobre la declaración del perito, insistió en lo siguiente:

> [...] 4. Soslaya el demandado decir que el perito Ing. Harry Figueroa declaró que dicha franja de terreno **_no_** cumple con las medidas que se requiere para poder cumplir con los requisitos de ancho para ser camino público.
>
> 5. El perito expresó que la servidumbre de paso en favor de esta finca es similar a la que físicamente está allí y la inscrita en el Registro de la Propiedad habiendo predio sirviente y predio dominante.
>
> 6. Soslaya decir el demandado que el terreno de los demandantes llega hasta la parte de arriba del talud que separa la finca de los demandados y los demandantes, por lo que no colinda con camino alguno, pues colinda con los terrenos de los demandados donde no hay camino sino un talud que sube hasta los terrenos de los demandados y colinda específicamente con ellos, no con camino alguno.[...]

(Énfasis en el original).

El 6 de mayo de 2025, la señora Luque Ocasio incoó su *Reacci[ó]n a d[ú]plica a moci[ó]n radicada por la parte demandada*.[12] En lo pertinente al testimonio pericial, la parte apelada replicó como sigue:

> [...]4. Equivocadamente, en el párrafo cuarto, el demandante manifiesta que se soslay[ó] el que el Perito Harry Figueroa declaró que dicha franja de terreno no cumple con las medidas que se requiere para poder cumplir con los requisitos de ancho para ser camino público. Quien soslaya y trata de confundir al Tribunal con dicha alegación es la parte demandante. La responsabilidad de establecer las medidas correctas, resultan ser las personas que hacen la segregación, que no fueron la parte demandada que aquí comparece, fueron los titulares de dicho solar que son, entre otros, la parte demandante. Pero lo importante no es si da o no da la cabida, es si se aprobó la segregación con esa salida.
>
> 5. El Ingeniero Harry Figueroa, como mencionáramos en nuestro escrito anterior, pudo haber dicho que Servidumbre de Paso a favor de esa finca es similar a que físicamente est[á] allí inscrita en el Registro de la Propiedad habiendo predio sirviente y predio dominante. Eso no es correcto y si lo hizo, se equivocó. Véase, que la servidumbre es de la colindancia Sur a la colindancia Norte y/o viceversa. Y eso significa, que es dentro del solar de los demandantes. La servidumbre se establece dentro del propio solar de la parte demandante, entre las colindancias Norte y Sur, para acceder al camino, pero es al camino que es descrito en un momento como municipal y en otro, como el camino público.[...]

---

[12] *Íd.*, Anejo 10, págs. 40-43. Debido a un error de enumeración de las páginas del Apéndice a partir de la página 21, identificamos la moción por el número marcado por la parte apelante.

Mediante *Orden*, emitida el 5 de mayo de 2025 y notificada el 9 de mayo de 2025, el TPI declaró No Ha Lugar la moción de determinaciones adicionales presentada por la parte apelante.[13]

En desacuerdo, el 6 de junio de 2025, el señor Bonilla Marcano y otros acudieron ante esta Curia mediante el recurso de *Apelación* de epígrafe en el que le imputaron al foro primario la comisión de los siguientes errores:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA SALA DE CAGUAS AL DECLARAR NO HA LUGAR LA "MOCIÓN AL AMPARO DE LA[S] REGLA[S] 43.1 Y 27 [47] [sic] DE LAS DE PROCEDIMIENTO CIVIL DE 2009, SEGÚN ENMENDADA", PRESENTADA POR EL DEMANDANTE – APELANTE, SOLICITANDO DETERMINACIONES DE HECHO ADICIONALES CONFORME ESTAS REGLAS SE SUSTENTAN CON LA PRUEBA PRESENTADA.

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA SALA DE CAGUAS AL DECLARAR NO HA LUGAR LA RECONSIDERACIÓN PRESENTADA POR EL DEMANDANTE – APELANTE MANTENIENDO EN VIGOR LA SENTENCIA DEL 13 DE [MARZO] DE 2025 Y NOTIFICADA EL 19 DE MARZO DE 2025 EN LA CUAL SE DECLARA NO HA LUGAR LA DEMANDA DE EPÍGRAFE Y DESESTIMA LA DEMANDA DE EPÍGRAFE Y DESESTIMA LA DEMANDA EN TODAS SUS PARTES Y CON PERJUICIO , , COMO SURGE LAS DESCRIPCIONES REGISTRALES DEL SOLAR DE LOS DEMANDANTES, DE LAS PROPIAS DESCRIPCIONES DE LOS SOLARES DE LA PARTE DEMANDANTE ESTABLECEN, DE MANERA CLARA Y ESPECÍFICA, QUE EL CAMINO EN CONTROVERSIA FUE IDENTIFICADO EN UN MOMENTO COMO CAMINO MUNICIPAL Y OTRO MOMENTO, COMO CAMINO DE USO PÚBLICO, EL CAMINO EN CUESTIÓN NO LE PERTENECE A LA PARTE DEMANDANTE POR LO QUE NO PUEDE PRIVAR DE SU USO AL [sic] DEMANDADA Y AL ORDENAR A LA PARTE DEMANDANTE QUE NOTIFIQUE DICHO CAMINO MUNICIPAL Y/O DEDICADO A USO PÚBLICO[.]

Pormenorizado el trámite procesal pertinente a la controversia presentada por la *Apelación* de epígrafe, en adelante consignamos el derecho aplicable.

**III.**

**A.**

La Regla 47 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 47, permite a una parte adversamente afectada por una orden,

---

[13] *Íd.*, Anejo 11, pág. 44. Debido a un error de enumeración de las páginas del Apéndice a partir de la página 21, identificamos el documento con el mismo número marcado por la parte apelante.

resolución o sentencia del Tribunal de Primera Instancia, la oportunidad de presentar una moción de reconsideración dentro del término de quince (15) días desde la fecha de archivo en autos de copia de la notificación de la orden, resolución o sentencia. Si se trata de una orden o resolución, dicho término es de cumplimiento estricto. Ahora bien, si es una sentencia, el término es de carácter jurisdiccional. En todo caso, la solicitud debe exponer con suficiente particularidad y especificidad los hechos y el derecho que se estima deben reconsiderarse. *Marrero Rodríguez v. Colón Burgos*, 201 DPR 330, 337-338 (2018)**.**

La citada Regla 47 establece que: "[u]na vez presentada la moción de reconsideración quedarán interrumpidos los términos para recurrir en alzada para todas las partes. Estos términos comenzarán a correr nuevamente desde la fecha en que se archiva en autos copia de la notificación de la resolución resolviendo la moción de reconsideración". A su vez, la Regla 47 advierte que de no cumplirse con las especificidades exigidas, la moción se rechaza, entendiéndose, en tales casos, que nunca interrumpió el término para recurrir en alzada de la orden, resolución o sentencia.

En otro extremo, la Regla 43.1 de las de Procedimiento Civil, *supra,* R. 43.1, permite a una parte solicitar determinaciones de hechos adicionales a la sentencia. El término para presentar esta solicitud es de quince días después de haberse archivado en autos copia de la notificación de la sentencia. Íd., *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 262 (2018).

La Regla 43.2 de las de Procedimiento Civil, *supra,* R. 43.2, establece que, si la moción cumple con los requisitos antes expuestos, los términos para presentar un recurso de apelación comienzan a transcurrir nuevamente una vez se archiva en autos copia de la notificación de la resolución referente a las determinaciones de hechos y conclusiones de derecho solicitadas.

Ahora bien, la Regla 43.1 de las de Procedimiento Civil, *supra*, dispone que: "[s]i una parte interesa presentar una moción de enmiendas o determinaciones iniciales o adicionales, reconsideración o de nuevo juicio, éstas **deberán** presentarse en un solo escrito y el tribunal resolverá de igual manera." (Énfasis nuestro). En ***Berríos Fernández v. Vázquez Botet,*** 196 DPR 245, 253 (2016), el Tribunal Supremo resolvió que este cambio en las Reglas de Procedimiento Civil surgió con el propósito de evitar que las partes presenten escritos de forma separada, con miras a, entre otras razones, suspender los términos para acudir en alzada. Íd., pág. 253-254. Véase, además, el *Informe de Reglas de Procedimiento Civil*, Comité Asesor Permanente de las Reglas de Procedimiento Civil, Secretariado de Conferencia Judicial y Notarial, 2007, pág. 524. Por ello, el Máximo Foro resolvió que "tanto la presentación de las mociones con efecto interruptor del plazo para acudir en alzada como las determinaciones en cuanto a estas deben hacerse simultáneamente". Íd., pág. 254. De esa forma, "se salvaguardan las garantías procesales que tienen las partes y su derecho a un debido proceso de ley. Esa concomitancia promueve que todas las partes sean debidamente notificadas del término único en el cual podrán instar un recurso de revisión o apelación". Íd., pág. 254.

**B.**

Un perito es aquel que, gracias a educación o experiencia, posee un conocimiento o una destreza sobre una materia de tal manera que puede formar una opinión que, a su vez, sirve de ayuda al juzgador. ***SLG Font Bardón v. Mini-Warehouse,*** 179 DPR 322, 338 (2010), traduciendo a *Black´s Law Dictionary*, 8th ed., Minn., Thomson West, 2004, pág. 619. Véase, además, la Regla 703 de Evidencia, 32 LPRA Ap. VI, R. 703. Al perito se le entiende como una persona competente e idónea debido a que tiene ciertas aptitudes, conocimiento y adecuada capacidad. ***SLG Font Bardón v. Mini-***

**Warehouse,** supra, pág. 338, citando a **San Lorenzo Trad., Inc. v. Hernández**, 114 DPR 704, 709 (1983).

De ahí que la función del perito en un litigio es auxiliar al tribunal. **Pueblo v. Soto González,** 149 DPR 30, 41-42 (1999) (Sentencia). Véase, además, la Regla 702 de Evidencia, *supra*, R. 702. A esos efectos, la Regla 702 de Evidencia, *supra*, permite que una persona testigo, capacitada como perito, pueda testificar en forma de opiniones o de otra manera cuando conocimiento científico, técnico o especializado sería de ayuda para que el tribunal entienda la prueba o determine un hecho en controversia. De la misma forma, dicha Regla establece los siguientes factores para evaluar el valor probatorio del testimonio del perito: (1) si el testimonio se basa en hechos o información suficiente; (2) si el testimonio es el producto de principios y métodos confiables; (3) si la persona testigo aplicó principios y métodos de manera confiable a los hechos del caso; (4) si el principio en que se basa el testimonio ha sido aceptado generalmente en la comunidad científica; (5) las credenciales de la persona testigo; y (6) la parcialidad de la persona testigo. Íd.

### C.

La glosa jurisprudencial ha resuelto que, los foros superiores no intervendrán con las determinaciones de hechos ni las adjudicaciones de credibilidad realizadas por el TPI, al menos que haya incurrido en error manifiesto, pasión, prejuicio o parcialidad. **Rivera Menéndez v. Action Service**, 185 DPR 431, 444 (2012); **SLG Rivera Carrasquillo v. AAA**, 177 DPR 345, 356 (2009). De hecho, son pocos los casos en donde se ha concluido que el foro de instancia incurrió en pasión, prejuicio, parcialidad o error manifiesto al evaluar la prueba desfilada. **Dávila Nieves v. Meléndez Marín**, 187 DPR 750, 771 (2013).

Esta norma de deferencia judicial se apoya en que la tarea de apreciación de la prueba testifical está llena de elementos subjetivos y es el TPI quien está en mejor posición para aquilatarla. ***Sucn. Rosado v. Acevedo Marrero***, 196 DPR 884, 917 (2016); véase también, ***Dávila Nieves v. Meléndez Marín***, supra, pág. 771. Cónsono con ello, cuando "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". Regla 110 (D) de Evidencia, 32 LPRA VI, R. 110; ***Rivera Menéndez v. Action Service***, supra, pág. 444; ***SLG Rivera Carrasquillo v. AAA***, supra, pág. 357. Por su parte, los foros apelativos solo cuentan con "récords mudos e inexpresivos". ***SLG Rivera-Pérez v. SLG Díaz-Doe et. al.***, 207 DPR 636, 658 (2021).

Conforme a la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". La intervención de un foro apelativo con la evaluación de la prueba testifical procede "'en casos en que un análisis integral de dicha prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia'". ***SLG Rivera Carrasquillo v. AAA***, supra, pág. 356 (*citando **Pueblo v. Cabán Torres***, 117 DPR 645, 648 (1986)). Por lo tanto, la parte apelante que cuestione una determinación de hechos realizada por el foro primario debe fundamentar la existencia de pasión, prejuicio o parcialidad, o error manifiesto. ***SLG Rivera Carrasquillo v. AAA***, supra, pág. 356; ***Flores v. Soc. de Gananciales***, 146 DPR 45, 49-50 (1998).

Ahora bien, a pesar de la deferencia judicial, cuando las conclusiones de hecho del TPI están basadas en prueba pericial o

documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido. ***González Hernández v. González Hernández***, 181 DPR 746, 777 (2011). Ante tales circunstancias, el Tribunal Apelativo tendrá facultad para adoptar su propio criterio con relación a la apreciación y evaluación de la prueba pericial, e incluso para descartarla, aunque resulte técnicamente correcta. *Íd.*; ***Mun. de Loíza v. Sucns. Suárez et al.***, 154 DPR 333, 363 (2001).

**IV.**

En el caso de marras, el TPI, tras evaluar y aquilatar la prueba documental y testifical desfilada ante sí, emitió una *Sentencia*, en la que declaró No Ha Lugar la *Demanda* incoada por los apelantes. Mediante el dictamen, ordenó al señor Bonilla Marcano y otros cesar y desistir de interrumpir el paso a la señora Luque Ocasio por un camino colindante entre las residencias de las partes ubicadas en el Barrio Sonadora de Aguas Buenas. Subsiguientemente, la parte apelante presentó su *Moción al amparo de la Regla 43.1 y 47 de las de Procedimiento Civil de 2009, según enmendada*. En la misma, solicitó determinaciones adicionales de hechos a tenor con su postura sobre el testimonio del perito. El foro primario denegó dicha solicitud.

En el caso ante este foro apelativo intermedio, la parte apelante imputó dos errores al TPI. En síntesis, señaló que el foro primario erró en declarar No Ha Lugar la moción sobre la determinación de hechos adicionales. También, objetó la desestimación, con perjuicio, del caso. Por estar íntimamente relacionados, discutiremos en conjunto ambos errores.

Según las normas jurídicas pormenorizadas, y a modo de resumen, las Reglas 47 y 43.1 de Procedimiento Civil, supra, otorgan a la parte adversamente afectada por una determinación judicial la oportunidad de exponer de forma **particular y específica** los hechos que necesiten ser reconsiderados por el foro sentenciador.

Sobre la opinión pericial, la jurisprudencia y las Reglas de Evidencia, supra, reseñan la ayuda que brinda al tribunal la opinión experta en cada caso presentado ante su atención.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de la TPO, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incurrió en los errores imputados por los apelantes.

Surge claramente de los documentos que obran en autos, y del pormenorizado testimonio pericial, según consta en la TPO, que el camino en controversia ha sido identificado como uno público.

La Certificación Registral del 11 de agosto de 2021, presentada por la parte apelante sobre la finca 8713, muestra anotada una transacción de compraventa a favor de la apelante Eva Díaz Ocasio. En ella, se consignan los siguientes linderos:

> [...] Linderos: Norte, En 52.52 metros con terrenos de un solar segregado mediante el caso número 79-45-B-104-KLP. Sur, En 28.29 metros con los terrenos propiedad de Félix David. Este, En 44.89 metros con los terrenos de la finca principal de la cual se segrega dicho lote. Oeste, En 45.80 con un camino municipal que posee acceso al lote a segregarse. [...][14]

En contraste al documento anterior, la parte apelante presentó una Certificación Municipal del 1 de octubre de 2009, la cual no registra el camino en controversia.

En lo pertinente, la Certificación Municipal consigna lo siguiente:

> [...] Que en la Oficina de Secretaría de la Legislatura Municipal de Aguas Buenas, luego de realizar una búsqueda en nuestros récord[s] no aparece que el camino que conduce hacia las residencias de la Señora Eva Díaz Ocasio y la Señora Isabel Ocasio Hernández, ubicado en la Carretera 174, kilómetro 20.1, Barrio Sonadora, Sector Loma Alegre de Aguas Buenas, Puerto Rico, como Camino municipal.[...][15]

---

[14] *Íd.*, Anejo 5, pág. 22-23. Debido a un error de enumeración de las páginas del Apéndice a partir de la página 21, identificamos el documento con el número marcado por la parte apelante.

[15] *Íd.*, Anejo 5, luego de la pág. 21. Debido a un error de enumeración de las páginas del Apéndice a partir de la página 21, identificamos el documento con la ubicación correspondiente en el apéndice.

De un pormenorizado análisis integral de los documentos sometidos al TPI y del testimonio pericial, según consta en la TPO, es forzoso colegir que los propios documentos presentados por la parte demandante establecen, de manera clara e inequívoca, lo manifestado y determinado en la Sentencia del TPI. Ese terreno cuando fue segregado en el caso número 79-45-B-104-KBL, se establecía que colindaba por el Oeste con un camino municipal, que resultaba ser el acceso al lote a segregarse. Era responsabilidad de las personas que segregaron, el haber llevado esa escritura al Municipio y haberse determinado que eso se constituyera en camino municipal. Era necesario que el Municipio aceptara la cesión del terreno y se constituyera la correspondiente escritura de cesión del mencionado camino para ser destinado a uso público. Por lo que no aparece un camino municipal porque no llevaron la escritura del camino municipal para cedérselos al Municipio.

La TPO presentada ante nos indica que la opinión pericial señaló el trámite que la parte apelante aún tiene pendiente para que se refleje la cesión del camino al Municipio.[16] Dicha gestión conciliaría la descripción de linderos expresada en los documentos analizados por el perito y sometidos al TPI.

En conclusión, la identificación del camino como municipal y/o público está apoyada en los documentos que obran en autos. La opinión pericial detalla el trámite exigido por las agencias[17] y que, según el plano y documentos presentados en este caso, impone a los apelantes la entrega de esa porción de camino al Municipio de Aguas Buenas. Según también surge del expediente, y del testimonio del perito, dicho trámite no se ha realizado. Esta diligencia permitiría a la Legislatura Municipal, como entidad emisora de la Certificación

---

[16] Véase TPO, 12 de diciembre de 2022, pág. 36, líneas 16-25; pág. 37, líneas 1-12; pág. 67, líneas 19-25.
[17] TPO, 12 de diciembre de 2022, pág. 35, líneas 10-25.

Municipal presentada y comentada por el perito en este caso, determinar si es necesario revisitar el documento municipal.[18] También, este proceso dará lugar al estudio de la documentación y a las dimensiones del camino que se identifica como público, aspectos disputados por la parte apelante, pero que fueron explicados en sala por el perito.[19] Adviértase, además, que el perito tuvo amplia oportunidad de testificar y el foro sentenciador otorgó entera credibilidad a su testimonio.[20] No intervendremos con el valor probatorio y la credibilidad que el foro primario otorgó al perito.

En vista de lo anterior, el TPI actuó correctamente al ordenar a los apelantes cesar y desistir de interrumpir el paso por el camino a la señora Luque Ocasio. El foro primario tampoco erró al desestimar el caso. Ambas partes deben colaborar para permitirse el paso mutuo en el camino en cuestión. De igual forma, nos unimos a la exhortación del foro primario a las partes para que prime la sana convivencia, en comunidad y armonía.[21]

A base de un pormenorizado análisis de toda la prueba desfilada ante el TPI, sobre todo en el testimonio pericial, resolvemos que no se cometieron los errores imputados.

**V.**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.


Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] Según las facultades otorgadas en el *Código Municipal de Puerto Rico*, Ley Núm. 107 de 2020, según enmendada, 21 LPRA secs. 7001 *et seq.*
[19] TPO, 12 de diciembre de 2022, pág. 44, líneas 11-24; pág. 61, líneas 7-14; pág. 99, líneas 17-20; pág. 103, líneas 21-23.
[20] Apéndice de la *Apelación,* Anejo 3, pág. 11.
[21] TPO, 12 de diciembre de 2022, pág. 160, líneas 14-17.